**In re TennOHIO TRANSPORTATION COMPANY.**

**Marpam Truck & Trailer Company, Garland Transportation Company,**

**and**

**Commercial Trailer Company, Debtors.**

Nos. 97–57772, 97–57773, 97–57776, 97–57777.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Feb. 4, 2000.

E. James Hopple, Victoria E. Powers, Schottenstein, Zox & Dunn Co., LPA, Columbus, OH, for debtors.

Daniel A. DeMarco, James E. Morgan, Hahn, Loeser & Parks, LLP, Columbus, OH, for Navistar Financial Corporation.

Richard Boydston, Benesch, Friedlander, Coplan & Aronoff, LLP, Cincinnati, OH, for the Committee of Unsecured Creditors.

### *OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT*

BARBARA J. SELLERS, Bankruptcy Judge.

## I. JURISDICTION

These contested matters are before the Court on two motions. The debtors have moved for summary judgment, or in the alternative, for partial summary judgment, on (1) their objection to the proof of claim of Navistar Financial Corporation ("Navistar"); (2) their motion for determination of the value of Navistar's secured claim; (3) Navistar's motion to consolidate the debtors' two motions; and (4) all responses to those motions. Navistar also has moved for partial summary judgment in regard to all of these matters. Both parties filed memoranda in support of their own motions and in opposition to the other party's motions. The crossmotions are ready for decision.

The Court has jurisdiction in these contested matters under 28 U.S.C. § 1334 and the General Order of Reference previously entered in this district. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A)(B)(K) and (O).

## II. SUMMARY JUDGMENT STANDARD

■ Rule 56 of the Federal Rules of Civil Procedure is made applicable to these contested matters by Bankruptcy Rules 7056 and 9014. Bankruptcy Rule 7056 provides that either party may move for summary judgment with or without affidavits. If a motion for summary judgment is made and supported as provided in this rule, the Court shall grant summary judgment only if the moving party establishes that there are no genuine issues as to any material fact and that it is entitled to judgment as a matter of law.

■ The fact that both the debtors and Navistar have moved for summary judgment does not change the standards upon which the Court must evaluate the summary judgment motions. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991). The Court is still required to resolve each motion on its own merits drawing all reasonable inferences against that party whose motion is under consideration. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir.1987). Where genuine issues of material fact remain, summary judgment is not proper for either side. *Id.*

The various motions and objections by the debtors and Navistar essentially request the Court to determine two issues: (1) the applicable standard for valuation of the property securing Navistar's claim for purposes of determining what treatment Navistar should receive on account of its secured claim, including whether Navistar is entitled to accrue postpetition interest under 11 U.S.C. § 506(b) and what disposition is to be made of the previously paid adequate protection payments; and (2) the applicable date for valuation of Navistar's collateral.

## III. FINDINGS OF FACT

Many of the operative facts are not disputed and are as follows:

1. The debtors filed their voluntary chapter 11 petitions on August 25, 1997 ("Petition Date").

2. As of the Petition Date, the debtors owed Navistar $7,109,197.61.

3. As of the Petition Date, Navistar's collateral consisted of 147 units of the debtors' rolling stock, consisting of 145 International Tractors, one specialty Kentucky trailer and one specialty Peterbilt Tractor (collectively the "Tractors"). The debtors and Navistar previously stipulated as to the identity of the Tractors and to

Navistar's perfected security interests in the Tractors, but did not agree as to the value of Navistar's collateral.

4. The debtors' bankruptcy schedules for Marpam Truck & Trailer Company list the value of Navistar's collateral at $6,900,000.

5. Pursuant to an agreement entered as an order, in response to a relief from stay motion filed soon after the Petition Date, the debtors paid Navistar as adequate protection $950 each month for each of the 145 International tractors. Such payments totaled $1,008,857 between the Petition Date and June 30, 1998.

6. On November 21, 1997, within two months of the Petition Date and with the agreement of Navistar, the debtors sold twenty-one of the Tractors to an independent third party for an aggregate gross sale price of $882,000. The purchaser paid all of that amount directly to Navistar.

7. Also in November 1997 the debtors turned over fourteen additional Tractors to Navistar pursuant to an agreement. Navistar sold these fourteen Tractors for a net sale price of $550,620, or an average of $39,330 per unit. Navistar retained all of that net sale price and credited those proceeds to the indebtedness of the debtors.

8. Pursuant to an amended and supplemental stipulation and agreed order of July 15, 1998, the debtors and Navistar agreed to grant relief from the automatic stay to Navistar and agreed on a method for Navistar's realization on its collateral. The debtors then turned over to Navistar all remaining Tractors (110 International Tractors and the two specialty units). Navistar was to sell those units through its affiliated used truck centers at various locations in the United States. The allowed amount of Navistar's secured claim was to be determined after the Tractors had been sold.

9. Beginning in July 1998, Navistar attempted to sell the remaining Tractors at retail. As of April 1, 1999, Navistar had sold 108 of the Tractors including the two specialty units. The gross sale price, the sale commissions, and the reconditioning expenses are set forth in a report of sale filed with the Court.

10. The gross sale price of the 108 Tractors sold by Navistar aggregated $5,208,869. Commissions totaled $458,555 (approximately 8.8%) and reconditioning expenses (excluding any reconditioning expenses incurred to date for the four units that have not yet been sold) totaled $480,893 (approximately 9.2%). According to Navistar's report, the net proceeds for the 108 Tractors sold aggregated $4,269,421.

11. The sales of Navistar's collateral have generated the following proceeds:

| | |
|---|---|
| 21 Tractors sold by debtors—gross proceeds paid to Navistar | $ 882,000 |
| 14 Tractors released to and sold by Navistar—net proceeds paid to Navistar | $ 550,620 |
| 108 Tractors sold by Navistar—net proceeds paid to Navistar | $4,269,421 |
| Subtotal: | $5,702,041 |

Projected additional sales:

| | |
|---|---|
| Projected net proceeds from sales of 4 remaining units @ $39,549 per unit (the per unit gross price of the 108 Tractors sold less 18% for projected commissions and reconditioning expenses) | $ 158,196 |

12. The following amounts have already been paid to Navistar:

| | |
|---|---|
| Adequate protection payments | $1,008,857 |
| Net proceeds of Tractor sales to date | $5,702,041 |
| Total: | $6,710,898 |

13. The debtors ceased business operations on or about June 30, 1998.

14. On December 16, 1998 the Court confirmed a first amended liquidating plan of reorganization. That confirmed plan of reorganization, which Navistar voted to accept, set out Navistar's secured claim in class 1.2. The plan provided that the collateral of certain secured claimants, including Navistar, either would be sold by the debtors or surrendered to the creditor in complete satisfaction of its secured claim. The plan further provided that the debtors would distribute the net proceeds of any sale to the holder of the allowed secured claim secured by the asset sold. Any al-

lowed secured claim which was oversecured on the Petition Date would be entitled to accrued postpetition interest. See First Amended Liquidating Plan of Reorganization filed December 7, 1998, Article III A.

## IV. LEGAL ISSUES

The disputed issues which the Court is asked to determine on summary judgment are the appropriate date for valuing Navistar's collateral and the valuation standard to be used. Depending upon those determinations there are issues about Navistar's entitlement to postpetition interest pursuant to 11 U.S.C. § 506(b) and the impact of the adequate protection payments made to Navistar throughout the case. Navistar argues that the Petition Date is the correct time to value its collateral and that fair market value should be the standard used in light of the debtors' desire to use the Tractors in their reorganization effort. Using the Petition Date and a fair market value standard, Navistar argues that it is oversecured and therefore, entitled to include accrued postpetition interest, plus reasonable fees, costs and charges, as provided under its agreements with the debtors. Navistar also argues that costs of sale are not relevant to any valuation of its allowed secured claim.

The debtors, on the other hand, argue that the proper time to value Navistar's allowed secured claim is at the time the collateral units are sold. The debtors further assert that the proper standard of valuation is liquidation value, as determined by the actual sale prices. In that context, the debtors argue that those sale prices must then be reduced by the amount of any costs of sale to arrive at the value of the secured claim. Such a result, according to the debtors, would eliminate any entitlement of Navistar to the accrual of postpetition interest or the inclusion of fees, costs and other charges. The debtors further dispute Navistar's right to retain all of the adequate protection payments the debtors made to Navistar during the case.

## V. DISCUSSION

Section 506(a) of the Bankruptcy Code states in applicable part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

As described in § 506(a), it is possible for the extent of an allowed secured claim to be determined at various points in a bankruptcy case. In this case the Court finds that such determination occurred several times.

### A. *Valuation for Adequate Protection Payments*

In the initial days of this case the debtors and Navistar negotiated an adequate protection agreement. That negotiation took place in response to Navistar's request for relief from the automatic stay. In order for the debtors to continue in business and try to reorganize, the parties recognized that use of Navistar' s collateral was necessary. Because the collateral consisted primarily of truck tractors, there was an understanding that the debtors' use of those Tractors, as well as the passage of time, would cause the value of the vehicle units to depreciate. Compensation for that decrease in value caused by the debtors' use while the automatic stay prohibited Navistar from repossessing and selling the Tractors was the purpose of the adequate protection payments made pursuant to § 363(e) and § 361. *See United Savings Ass'n. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The parties then

attempted to estimate the decline in that value which would be caused by the debtors' usage. The agreed-upon amount, with two exceptions, was $950 each month per unit for 145 vehicle units.

■ The Court finds that, in the context of the debtors' proposed use and business operations, replacement value was the appropriate valuation standard to be used for the adequate protection agreement. The proper time for that valuation was when Navistar made its request for relief from the stay. The only purpose for that valuation, however, was to determine the appropriate amount of adequate protection payments. Replacement value, in that context, would be what the debtors, or any other similar purchaser, would have to pay for similar units minus any portion of that price attributable to reconditioning costs. *See Associates Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 1886–87 fn. 6, 138 L.Ed.2d 148 (1997).

### B. *Valuation for Pre–Confirmation Sales*

■ The next point at which the valuation of Navistar's secured claim became relevant was when the various units were sold. At the time of each sale, the debtors ceased making adequate protection payments on account of that Tractor unit. When the debtors sold Tractor units, the purchaser paid the sales price to Navistar. For the units Navistar sold through its affiliated vehicle centers, Navistar received the net sale proceeds. The debtors sold 21 units to a third party soon after the case was filed. Shortly thereafter the debtors also surrendered another 14 units to Navistar and Navistar sold those units. Later in the case, about two weeks after the debtors ceased operating their business, the debtors turned over the remaining 112 units to Navistar for sale. All but four of those units had been sold by April 1, 1999.

For the units sold prior to the December 16, 1998 confirmation of the debtors' plan, the Court finds that the time for valuing the extent of Navistar's interest in the estate's interest in those units was the time of sale. Whether the standard used is called "fair market value," "liquidation," or some other commonly used phrase is irrelevant. The units were sold at retail outlets operated by an affiliate of Navistar. There is no reason to conclude that the price received was not a fair price for that market and there is no indication that there was any shortened period imposed on that sale. The sale price obtained, minus any and all costs for such sale, established the value of Navistar's interest in the estate's interest in that property. The parties intended the units to be sold and the amount of the secured claim thereby established and satisfied by the sale is the sale price minus all costs associated with that sale. To the extent a debt remained for a particular unit after application of the net proceeds from the sale to the corresponding obligation, Navistar would have an unsecured deficiency claim.

### C. *Valuation Under the Confirmed Plan*

■ To the extent there were units remaining at the time the debtors' plan was confirmed, Navistar had an allowed secured claim equal to the net amount it could obtain from the sale of those units. The time for that valuation, absent a specific plan provision, would be the time of confirmation. The debtors' plan, however, established a presumption that the secured claim was equal to any net proceeds obtained by the creditor from the sale of the surrendered collateral. The time that valuation presumption arose was the effective date of the plan and the valuation standard was the net sale price to be obtained by Navistar. Whether Navistar sold the Tractor unit for fair market value, retail, or some other value did not change the result.

### D. *Postpetition Interest, Reasonable Costs, Fees and Charges*

Navistar's entitlement under 11 U.S.C. § 506(b) to interest, plus reasonable costs, fees and charges provided under its agree-

ment is more difficult for the Court to determine. The plan provision is unclear and the attachments to Navistar's proof of claim were so deficient that the Court could not determine whether the "debt" consists of 147 separate purchase-money obligations, one or more judgments on separate obligations, an aggregate amount based on a blanket security agreement or a cross-collateralization arrangement.

■ For purposes of this decision the Court will assume that there are separate obligations and security agreements between Navistar and the debtors for each of the Tractor units. If the replacement value of a Tractor unit, determined as of the time the bankruptcy was filed, exceeded the amount of the obligation attributable to that unit at that time, entitlement exists for the recovery of § 506(b) interest, plus reasonable fees, costs and charges provided under the agreement. That recovery, however, may not be greater than the excess value. The replacement value would be equal to what the debtors would have had to pay for a similar Tractor unit at that time at an outlet such as those Navistar maintained through its affiliate, minus any portion of such sale costs which would be attributable to costs of reconditioning a unit for resale. *See id.* Other costs of sale would not be deducted.

### E. *Retention of the Adequate Protection Payments*

■ The last issue raised relates to Navistar's retention of all adequate protection payments. Such payments were intended to compensate Navistar for depreciation in the value of the Tractors caused by the debtors' use of the collateral and the passage of time while the automatic stay was in effect. The parties agreed on an amount of $950 per unit per month for all but two of the units. Subtraction of the net proceeds obtained at the time the unit was sold plus any reconditioning expenses incurred to prepare the unit for sale from the replacement value at the time of Navistar's request for adequate protection will produce the correct amount for the adequate protection payments. To the extent actual payments exceeded that amount, the excess should be returned to the debtors to become part of the estate's assets to be distributed *pro rata* to unsecured creditors. Return of that excess is more appropriate than application of the excess to the allowed secured claim because Navistar's receipt of either net sale proceeds or the collateral would have satisfied its allowed secured claim in full, by definition. Application of any excess adequate protection payments to Navistar's debt, therefore, would result in payment of Navistar's allowed unsecured obligation in a percentage which would exceed that paid to other similarly situated unsecured creditors. That would violate the principle of equal distribution to similarly situated creditors which is at the heart of the Bankruptcy Code.

### VI. CONCLUSIONS OF LAW

In conclusion, the Court finds that the debtors' and Navistar's motions for summary judgment are each **GRANTED** in part and **DENIED** in part consistent with the Court's findings that:

A. The time for valuation in connection with the adequate protection agreement is the time of the request and the valuation standard is replacement. Replacement value is determined by what the debtors would have to pay to replace a Tractor unit in a readily available commercially reasonable setting, minus any portion of that price which represents reconditioning costs.

B. The time for valuation in connection with the satisfaction of any secured claim relating to a Tractor unit sold by either the debtors or Navistar after the Petition Date, but before confirmation of the debtors' plan of reorganization, is the date of the sale. The valuation standard is the net price obtained from the sale after deduction of all costs associated with that sale.

C. The time for valuation of Navistar's secured claim to be paid through the plan of reorganization is the effective date of the plan. That secured claim was satisfied by the debtors' previous return to Navistar of all remaining Tractor units. Whatever net sales proceeds Navistar could obtain from its disposition of a Tractor unit, by plan definition, equals the amount of its secured claim as to that particular unit.

D. Navistar's entitlement under 11 U.S.C. § 506(b) to accrue postpetition interest plus reasonable costs, fees and charges provided in the applicable contract is determined by comparing the replacement value of the unit at the Petition Date with the amount of the corresponding obligation at the Petition Date. Any entitlement to § 506(b) recovery cannot exceed the difference between the replacement value and the amount owed to Navistar apart from such interest, costs, fees and charges.

E. Navistar's entitlement to retain the adequate protection payments received for each Tractor unit is only to the extent such payments represent actual depreciation in value caused by the imposition of the automatic stay and the debtors' use of the collateral. Actual depreciation can be determined by subtracting the net sale proceeds plus any reconditioning costs associated with that sale from the replacement value of the Tractor unit at the time of the request for adequate protection. Any adequate protection payments received by Navistar in excess of that depreciation calculation should be returned to the debtors.

**IT IS SO ORDERED.**